UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL THOMAS McCLURE,

      Plaintiff,                 Civil Action No. 16-10109

           v.              District Judge Robert C. Cleland
                           Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

    Plaintiff Michael Thomas McClure ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #14] be DENIED and that Plaintiff's Motion for Summary Judgment [Docket #10] be GRANTED to the extent that the case is remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On February 7, 2013, Plaintiff applied for DIB and SSI, alleging disability as of January 29, 2013 (Tr. 117-123, 124-129). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 14, 2014 before Administrative Law Judge ("ALJ") Mary S. Connolly (Tr. 32). Plaintiff, represented by attorney Emily Walker, testified (Tr. 35-54), as did Vocational Expert ("VE") Dr. Lois P. Brooks (Tr. 54-55). On January 7, 2015, ALJ Connolly found Plaintiff not disabled (Tr. 18-24). On November 17, 2015, the Appeals Council denied review (Tr. 1-6). Plaintiff filed the present action on January 13, 2016.

## BACKGROUND FACTS

Plaintiff, born June 11, 1978, was 36 at the time of the administrative decision (Tr. 24, 117). He completed a GED in 2004 and worked previously as a mattress builder (Tr. 167). He alleges disability as a result of a back injury and arthritis of the hands and back (Tr. 166).

### A.      Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived in Taylor, Michigan (Tr. 36). In 2012 and up until the January, 2013 onset of disability, he worked "under the table" as home siding installer (Tr. 36). In January, 2013, he lost feeling in his lower extremities while he was working on the roof of a building and EMS was called to retrieve him from the roof by stretcher (Tr. 37). Since that time, he

experienced constant back pain and lower extremity numbness (Tr. 37). His toes were completely numb (Tr. 38). Steroid injections did not improve his condition (Tr. 38). He took Norco, Valium, Lamictal, Trazadone, and Omeprazole (Tr. 38). He had been told by a neurosurgeon that surgery would not guarantee a good result (Tr. 39). The lower back pain was his most severe problem, but he experienced upper and mid-back pain as well (Tr. 39). He had experienced depression and anxiety since his teenage years and the condition had become worse recently due to physical and family problems (Tr. 39-40). His mother stayed at his house three weeks out of four because it was closer to the facility where she received treatment for lymphoma (Tr. 41).

In response to questioning by his attorney, Plaintiff reported that he avoided climbing stairs (Tr. 41-42). He was unable to sit or stand for more than 15 minutes or walk for more than two blocks (Tr. 42-43). He used a walker for some time but currently did not use a walker or cane (Tr. 43). He was unable to lift more than a gallon of milk (Tr. 43). He spent most of the day reclining, noting that he could do this because his four-year-old daughter had just started school (Tr. 43-44). His mother helped him take care of his daughter and he also received help from the mother of his one-year-old child (Tr. 44). His household activities were limited to hand-washing dishes and loading and unloading the dishwasher (Tr. 44). He was able to spend up to 15 minutes doing chores before needing to recline (Tr. 44-45). Due to back pain, he experienced sleep disturbances around three times a night and required two naps during the day (Tr. 45-46).

-3-

Plaintiff was hospitalized in January, 2014 after expressing suicidal thoughts (Tr. 46). He was on a waiting list to see a therapist who took his insurance (Tr. 46). He drove short distances on an occasional basis (Tr. 46). He took care of most of his personal needs with the help of handicap-friendly hardware in the bathroom (Tr. 47). He experienced the medication side effects of tunnel vision and memory problems (Tr. 48). He required reminders to keep appointments (Tr. 49). He broke his right hand the year before and continued to experience problems pulling and squeezing (Tr. 50). Cold weather caused hand pain (Tr. 50). He had been hospitalized in January, 2014 after having a domestic dispute (Tr. 51). Plaintiff noted that the dispute made him realize that he required mental health treatment (Tr. 51). He continued to experience right-hand stiffness (Tr. 53). In addition to the other medications, he took Advair for asthma (Tr. 53). The asthma symptoms were precipitated by anxiety (Tr. 54).

## B. Medical Evidence

On January 30, 2013, Plaintiff was transported to the hospital by ambulance after injuring his back while working on the roof of a house (Tr. 219). He reported hearing his back "pop" at the time of the injury and was unable to move for 90 minutes until the ambulance arrived (Tr. 227, 231). Plaintiff reported that he previously injured his back in 2009 (Tr. 227). He admitted to weekend alcohol use and marijuana use "on occasion" (Tr. 228). Discharge records dated February 3, 2013 state that an MRI showed mild to moderate spinal stenosis with thecal sac compression L4-L5 but no herniated discs (Tr. 220, 249, 314-

315).  At the time of discharge, Plaintiff required the use of a walker (Tr. 221).

The following week, Dr. Ahmed Qadir, M.D. noted Plaintiff's report of continued level "10" pain on a scale of 1 to 10 (Tr. 278).  Plaintiff reported the side effect of nausea from the pain medication (Tr. 278).  He admitted to marijuana use "at times" to cope with "excruciating pain" (Tr. 279).  Dr. Qadir noted that Plaintiff was in "significant distress" (Tr. 279).

The same month, neurosurgeon Martin J. Buckingham, M.D. noted that Plaintiff stood with difficulty and was unable to walk on his toes or heels (Tr. 269).  Dr. Buckingham observed a limited range of lumbar spine motion and lower extremity weakness (Tr. 269).  He recommended a course of conservative treatment including steroid injections and physical therapy (Tr. 269).  Dr. Buckingham remarked that it was unclear whether Plaintiff could afford physical therapy (Tr. 269).  He found that if conservative treatment failed, Plaintiff could be "a candidate for a lumbar fusion" (Tr. 269, 312).  Dr. Qadir's notes from March, 2013 state that Plaintiff reported slightly reduced pain after undergoing steroid injections but continued to exhibit lower extremity weakness (Tr. 276-277).  Dr. Qadir observed that Plaintiff was in significant distress (Tr. 276).  In April, 2013 Plaintiff again sought treatment after reinjuring his back (Tr. 274).  He reported renewed pain, foot numbness, and lower extremity weakness (Tr. 274).

In May, 2013, Chad A. Krueger, M.D.  noted Plaintiff's report of little improvement from steroid injections and radiating pain into the left foot (Tr. 293).  Dr. Krueger observed

-5-

"severe pain" with motion (Tr. 295). Dr. Krueger noted an appropriate mood and affect (Tr. 296). He referred Plaintiff for a neurosurgical consultation (Tr. 372). In June, 2013, neurosurgeon Anthony P. Cucchi, D.O., stated, "I wish I had more for him," and opined that surgery would not improve Plaintiff's condition (Tr. 301-302, 310-311). The same month, Plaintiff fractured his right hand after becoming involved in a fight at the Michigan International Speedway (Tr. 342, 482). The same month, he underwent surgery to repair the fracture (Tr. 339, 343, 353). The following month, a nerve block was administered without complications (Tr. 325). John Peter Cowen, M.D. noted lumbar spine tenderness but no neurological defects and a non-antalgic gait (Tr. 325-326). Treating notes from the same month state that Plaintiff experienced hand pain following surgery for a right hand fracture (Tr. 338). Dr. Krueger noted continued back pain and spasms (Tr. 431). Plaintiff reported depression, but displayed an appropriate mood and affect (Tr. 487).

In September, 2013, Dr. Krueger completed a functional questionnaire, stating that as of January 28, 2013, Plaintiff was unable to sit for more than four hours or stand/walk for two in an eight-hour workday (Tr. 363, 444). He found that Plaintiff would be required to elevate both legs to chest level or higher while sitting (Tr. 363). He found further that Plaintiff was limited to lifting or carrying 10 pounds on an occasional basis (Tr. 363). Dr. Krueger also found that Plaintiff was precluded from all grasping, turning, twisting, and fine manipulations with the right hand (Tr. 363). He found that Plaintiff's limitations would require him to miss work up to three times a month (Tr. 363). His office notes state that he

re-prescribed Norco and Valium for back pain and spasms (Tr. 433). The following month, Dr. Krueger restated most of the findings in his earlier disability opinion, but found that Plaintiff was capable of sitting only two hours and standing/walking for one hour in an eight-hour workday (Tr. 400). He also found that Plaintiff could use his right hand for large and fine manipulations on an occasional basis (Tr. 400). Dr. Krueger's treating records note a normal mood and affect (Tr. 498).

In January, 2014, Plaintiff was admitted for inpatient psychiatric treatment (Tr. 446-449). Cory London, M.D. made a diagnosis of acute suicidal ideation and "likely bipolar disorder with aggressive features," after Plaintiff "destroyed his children's toys and pushed his girlfriend against a wall" after she broke up with him (Tr. 446). Plaintiff then instructed a friend whom he knew "to be a significant intravenous drug addict" to inject "death doses" of "cocaine and heroin" because he was "tired of disappointing and hurting people" (Tr. 447, 508). He denied drug abuse prior to the suicide attempt (Tr. 509-510). Emergency room notes state that Plaintiff "vociferously denies any chronic drug abuse" and exhibited only "two track marks" consistent with the reported attempted suicide (Tr. 512). An admitting diagnosis was made of an impulse control disorder, "polysubstance dependence including opioid type drug, continuous use," and a mood disorder (Tr. 450). Psychiatrist James D. Mattimore, M.D. noted that Plaintiff had made a suicide attempt and now acknowledged that he required treatment (Tr. 507). Dr. Mattimore opined that given Plaintiff's "impulsivity," recent "severe" suicide attempt, "complete lack of social support," and "significant

psychosocial stressors," he should be admitted (Tr. 507).  Notes from an interview by Herbert

L. Malinoff, M.D. state that Plaintiff admitted to ongoing marijuana use but denied the use

of other street drugs (Tr. 522).  Plaintiff reported that he had "been off of drugs for some

time . . ." (Tr. 530).  Dr. Malinoff, noting that Plaintiff tested positive for cocaine and

opiates, found "chemical dependency with street drugs" (Tr. 523).  Discharge records state

a GAF of 55[1]   (Tr. 525).  Discharge records state further that Plaintiff had been given sole

custody of his three-year-old daughter because the mother was a drug addict (Tr. 526).

Dr. Krueger's notes from the same month note a recent diagnosis of bipolar disorder

(Tr. 500).  Plaintiff opined that surgery would help his symptoms (Tr. 500).  Dr. Krueger

noted that he would wait for a psychiatrist's opinion before prescribing psychotropic drugs

(Tr. 500).

In April, 2014, Dr. Krueger gave Plaintiff a "poor" prognosis, noting that his findings

were based on a limited range of lumbar spine motion, tenderness, muscle spasms, sensory

loss, and an abnormal gait (Tr. 401).  He noted that Plaintiff had recently been diagnosed

with a bipolar disorder (Tr. 405).  Plaintiff continued to take Norco and Valium for back pain

and spasms (Tr. 456).  Treating records show a gait disturbance, numbness, and leg tingling

(Tr. 462).  Plaintiff appeared fully oriented with a normal mood and concentrational abilities

---

[1]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (4th ed.2000)("*DSM-IV-TR*").

(Tr. 463).   Treating records note that Plaintiff had recently acquired "new insurance" (Tr. 469).   In July, 2014, Dr. Krueger recommended physical therapy (Tr. 472).   He noted an antalgic gait and that Plaintiff was "uncomfortable due to pain" (Tr. 478).

Dr. Krueger's August, 2014 treating records state that Plaintiff continued to take Norco and Valium for back pain (Tr. 437).   Dr. Krueger completed a mental health evaluation, noting that Plaintiff had been hospitalized for bipolar disorder in January, 2014 (Tr. 439).   He found a depressed mood with a flat affect, decreased energy, concentrational difficulties, insomnia, and mood swings (Tr. 440).   He found that the mental condition was exacerbated by back pain (Tr. 441).   He noted that Plaintiff was "easily agitated" (Tr. 441). Dr. Krueger found moderate and marked limitations in concentration and persistence and moderate limitation in the ability to travel unfamiliar places of use public transportation (Tr. 442).   He found that Plaintiff experienced the psychological limitations as of January 28, 2013 (Tr. 443).   In November, 2014, Dr. Krueger stated that Plaintiff's "past or present drug and/or alcohol use" was unrelated to his disability, noting that the "use of drugs and/or alcohol is a symptom of his condition, and/or is a form of self-medication . . ." (Tr. 553).

## C.  Vocational Expert Testimony

VE Dr. Brooks classified Plaintiff's former work as an iron worker as exertionally heavy and skilled and construction work, heavy/semiskilled[2] (Tr. 54).   The ALJ then

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

described a hypothetical individual of Plaintiff's age, education, and work experience:

> [S]edentary work, would have the ability to sit, stand every 20 minutes for each function. Also would have moderate concentration, pace, and persistence limitations, off-task up to 10 percent. Could he do any of the past work? (Tr. 54-55).

In response, the VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for the work of an assembler (1,500 positions in the region of Southeast Michigan); visual inspector (900); and sorter (1,000) (Tr. 55). The VE testified that the need to recline twice each workday for a period totaling two hours would preclude all work (Tr. 55).

**D. The ALJ's Decision**

Citing the medical records, ALJ Connolly found that Plaintiff experienced the severe impairments of "degenerative disc disease, mood disorder, status post hand fracture, asthma, and substance abuse" but that none of the conditions met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 20). She found that Plaintiff experienced mild limitation in activities of daily living, social functioning, and moderate limitation in concentration, persistence, or pace (Tr. 21). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

-10-

limitations:

> [A]bility to sit/stand every 20 minutes for each function and moderate
> concentration, persistence, and pace limitations off task up to 10 percent (Tr.
> 22).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform his past

relevant work, he could work as an assembler, visual inspector, or sorter (Tr. 25).

The ALJ discounted Plaintiff's alleged degree of limitation. She found that the

treating history did not reflect disabling conditions (Tr. 24). She found that Plaintiff was able

to work subsequent to the January, 2013 onset of back problems and was able to engage in

activities such as camping which were inconsistent with the allegations of disability (Tr. 24).

She discounted Dr. Krieger's finding that substance abuse did not contribute to Plaintiff's

mental health problems (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of

Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way,

-11-

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

-12-

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff argues first that the ALJ failed to provide an adequate rationale for rejecting Dr. Krueger's multiple disability opinions. *Plaintiff's Brief,* 14-21, *Docket #11,* pg ID 617. As to the physical limitations, Plaintiff contends that the ALJ did not explain her reasons for rejecting the finding that he was unable to sit, stand, or walk for the number of hours required for even sedentary work. *Id.* at 14-19. Plaintiff also argues that the ALJ erred by rejecting Dr. Krueger's findings regarding the mental limitations on the sole basis that Dr. Krueger was not a psychiatrist. *Id.* at 19-21.

### 1.  Basic Principles

It is long established that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for

giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

## 2. The Physical Limitations

As to Dr. Krueger's disability opinions, the ALJ noted that "[t]he forms pertaining to the back condition limited the claimant to sedentary work with a sit/stand option" (Tr. 23). The ALJ added that she rejected Dr. Krueger's finding that Plaintiff was unable to lift anything and the finding that Plaintiff "would have high absenteeism," noting respectively that Plaintiff was able to lift his child and that there was "no indication in Dr. Krueger's records that he would have high absenteeism" (Tr. 23-24).

The ALJ's determination that the "no lifting" and "high absenteeism" restrictions were unsupported by the record is adequately explained and supported. However, her statement that Dr. Krueger found Plaintiff otherwise capable of sedentary work misstates his findings. In fact, Dr. Krueger opined repeatedly that Plaintiff was incapable of the exertional requirements of sedentary work: September, 2013 (sit four hours, stand/walk for two); October, 2013 (sit two hours, stand/walk one); and April, 2014 (sit for one hour, stand/walk zero to one) (Tr. 363, 400, 404, 444). Dr. Krueger's findings are particularly significant, given that this record does not contain either a consultative or non-examining evaluation by the SSA. The ALJ's misstatement of key portions of Dr. Krueger's treating opinions requires a remand for clarification.

The fact that elsewhere in the determination, the ALJ discount Plaintiff's claim that he was unable to walk significant distances does not cure her misreading of Dr. Krueger's treating opinion. While the ALJ notes that Plaintiff's ability to "camp" in June, 2013 suggests that he was capable of walking for significant periods, Plaintiff testified only that he tried to "make an appearance" at the Michigan International Speedway where his extended family camped on a yearly basis before breaking his hand fending off an assault (Tr. 52). The ALJ's unrelated observation that Plaintiff was able to "camp," with nothing more, does not address the exertional limitations contained in Dr. Krueger's treating opinions.

The ALJ's erroneous reading of Dr. Krueger's assessments undermines the RFC for sedentary work and the ultimate non-disability determination. It is unclear whether the ALJ

-15-

even perceived that Dr. Krueger's exertional findings were inconsistent with the ability to perform even sedentary work.   As such, a remand for clarification is warranted.

### 3. The Mental Limitations

While Plaintiff also argues that the ALJ improperly discounted Dr. Krueger's opinion of his mental limitations, the ALJ provided a mostly adequate discussion this portion of the treating findings, noting that the finding of moderate mental limitation was supported by the record (Tr. 24).  While I note that the ALJ cited Dr. Krueger's "mild to moderate" findings, Dr. Krueger's assessment actually includes mild, moderate and *marked* concentrational limitations (Tr. 21, 24, 442).   However, substantial evidence (including numerous observations by Dr. Krueger of an unremarkable affect and mood) generally supports the ALJ's finding of moderate concentrational limitations (Tr. 442).

However, because other grounds exist for remand, upon remand, I recommend that the ALJ address and explain her reasons for discounting Dr. Krueger's finding that Plaintiff experienced a number of marked limitations in mental functioning.

### B. The Credibility Determination

The ALJ's rationale for the credibility determination is also of concern.  In support of the finding that Plaintiff was "not fully credible," she stated that "the treatment history is not indicative of disabling physical conditions, psychiatric conditions, or pain" (Tr. 24).  However, none of the treating records or surgical consultations suggest that Plaintiff exaggerated his symptoms or was otherwise malingering.  Aside from Dr. Krueger's multiple

-16-

disability findings, discussed above, Dr. Qadir observed that Plaintiff was "in significant distress" (Tr. 278-279) and had lower extremity weakness (Tr. 276-277). Dr. Buckingham noted range of motion deficiencies and lower extremity weakness (Tr. 269). Dr. Cucchi's neurosurgical consultative examination notes do not suggest that Plaintiff overstated his limitations. Dr. Cucchi, opining that the back condition would not be improved by surgery, remarked that he "wish[ed] [he] had more" to offer Plaintiff (Tr. 301-302, 310-311).

While the ALJ hinges her credibility determination in large part on Plaintiff's ability to "camp" (Tr. 23-24), she failed to develop the record after eliciting Plaintiff's testimony that he fractured his hand after showing up at a family campsite (Tr. 52). The fact that Plaintiff made an appearance at the family outing, with nothing more, does not support the ALJ's conclusion that he was able to stand or walk up to two hours a day as required for sedentary work, notwithstanding her observation that the campgrounds in question were "extensive and require greater walking ability tha[n] claimed" (Tr. 23).

The ALJ's finding that "polysubstance abuse" contributed to the disability also requires more development (Tr. 24). Inpatient hospitalization records created after the January, 2014 suicide attempt note that Plaintiff tested positive for cocaine and opiates (Tr. 523). However, the positive drug test appears to be attributable to Plaintiff's attempt to kill himself with overdoses of heroin and cocaine which were supplied to him by an illicit drug user. None of the records created between Plaintiff's January, 2013 workplace accident and the January, 2014 hospitalization suggest illicit drug use other than his admitted occasional

use of marijuana. Notably, emergency room records following the suicide attempt show only two track marks - consistent with Plaintiff's report that the drugs were the "weapon of choice" in the suicide attempt, rather than evidence of ongoing substance abuse (Tr. 447, 512).

The ALJ's finding that Plaintiff "worked after the onset of his back pain" is puzzling, given the lack of any evidence that Plaintiff worked beyond the January, 2013 workplace accident (Tr. 24). It also contradicts the ALJ's Step One finding that Plaintiff had not engaged in Substantial Gainful Activity since applying for disability one week after the accident (Tr. 20). Although the ALJ faults Plaintiff for reporting that back surgery had been recommended, Dr. Buckingham's findings state that Plaintiff could be a candidate for surgery in the future if conservative measures failed; it is unclear how Plaintiff's claims are discredited by his statement that surgery had been recommended (Tr. 269, 312). The ALJ's observation that Plaintiff had been referred for physical therapy " but there is no evidence he has participated in such treatment" fails to acknowledge the treating observation that it was unclear whether Plaintiff could afford physical therapy (Tr. 269). Under SSR 96–7p, 1996 WL 374186, *7 (July 2, 1996), an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain the "failure to seek medical

-18-

treatment."[3] *See also* SSR 82–59, 1982 WL 31384, *4 (1982)(The ALJ must consider an individual's claim that she is unable to afford the prescribed treatment). The record also suggests that Plaintiff's ability to procure long-term mental health treatment was hampered by health insurance restrictions (Tr. 46, 269, 500). While an ALJ's credibility determination, is generally accorded great deference, *see Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542–43 (6th Cir. 2007), the ALJ's questionable findings in support of the determination require a remand for fact finding and analysis.

Notwithstanding the errors in the administrative determination, it cannot be said that "all essential factual issues have been resolved." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994). Accordingly, I recommend a remand for further administrative proceedings consistent with the above analysis.

## **CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #14] be DENIED and that Plaintiff's Motion for Summary Judgment [Docket #10] be GRANTED to the extent that the case is remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

---

[3]While SSR 96-7p was superseded by SSR 16-3p, SSR 96-7p applies to the current decision, issued in 2015.

appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: February 6, 2017

-20-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on February 6, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager